**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**PATRICK A. BRENNER, II,**

       **Plaintiff,**               **CIVIL ACTION NO. 11-13888**

       **vs.**                      **DISTRICT JUDGE AVERN COHN**

**COMMISSIONER OF**          **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

       **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

**I.**      **RECOMMENDATION:**    This Court recommends that Defendant's unopposed motion for summary judgment (docket no. 26) be GRANTED and Plaintiff's complaint be dismissed.

**II.**     **PROCEDURAL BACKGROUND**

On August 27, 2007 Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning December 26, 2006. (TR 11, 137-40). The application was denied and Plaintiff filed a written request for a *de novo* hearing. On June 16, 2010 Plaintiff appeared with counsel in Lansing, Michigan and testified at a video hearing held by Administrative Law Judge (ALJ) Karen Sayon, who presided over the hearing from Orland Park, Illinois. (TR 34-78). Vocational Expert (VE) Joanne M. Pfeffer also appeared and testified at the hearing. In a July 8, 2010 decision the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act from December 26, 2006 through July 8, 2010 because he remained capable of performing a significant number of jobs in the national economy. The ALJ's decision

became the agency's final decision when the Appeals Council declined to review the decision on June 30, 2011. (TR1-5).

Plaintiff commenced the instant action for judicial review on September 7, 2011. (Docket no. 1). The complaint states generally that Plaintiff filed for disability due to a back injury and "other issues" related to his shoulder and neck. It states that Plaintiff has problems with anxiety and dealing with pain and stressful situations. It states that Plaintiff's thought processes are not always logical and consistent, and his thoughts are "foggy" as a result of pain and medication. The complaint states that Plaintiff received medical treatment from Dr. Chodoroff and psychological treatment from Dr. Barberio, and alleges that the ALJ's denial does "not appear to be based on any of [his] medical or psychological doctor's findings." (Docket no. 1).

On November 14, 2011 Defendant filed a motion to dismiss on the grounds that Plaintiff failed to file the complaint within sixty days of the Appeals Council's decision and was therefore barred from judicial review. (Docket no. 10). The Court reviewed that motion and concluded that Plaintiff's complaint was filed one day late. Nevertheless, the Court denied Defendant's motion to dismiss after finding that Plaintiff was entitled to equitable tolling. (Docket no. 17). Subsequently, all pretrial matters were referred to the undersigned. (Docket no. 18).

On October 2, 2012, the Court entered a Scheduling Order setting November 5, 2012 as the deadline for filing Plaintiff's motion for summary judgment. (Docket no. 22). Plaintiff did not file a motion for summary judgment or make any attempt to seek an extension of time. As a consequence the Court ordered Plaintiff to show cause in writing on or before November 30, 2012 why he failed to comply with the Scheduling Order. (Docket no. 23). The Order directed Plaintiff to respond in writing to the Show Cause Order or file a motion for summary judgment by November

30, 2012.  Plaintiff did neither.  On February 4, 2013 Defendant filed a motion for summary judgment.  (Docket no. 26).  Plaintiff did not respond to the motion.

The Commissioner now moves, unopposed, for summary judgment seeking affirmance of the Commissioner's final decision.

## III.   TESTIMONY OF PLAINTIFF AND PLAINTIFF'S MOTHER, VOCATIONAL EXPERT TESTIMONY, AND MEDICAL EVIDENCE

### A.   Testimony of Plaintiff

Plaintiff was thirty-nine years old on his alleged disability onset date.  (TR 25).  He graduated from high school and reported that he attended special classes.  He testified that he has a driver's license but has difficulty driving because he can sit for only fifteen to twenty minutes at a time and his attention wanders when he drives.  (TR 41-42).  He testified that he has had two back surgeries and he experiences constant pain radiating to his legs.  (TR 46-47, 60).  He claimed he has neck and left shoulder problems after being hit in the back of the neck with a tree limb, he has carpal tunnel syndrome with numbness in his fingers, and he experiences feelings of depression and hopelessness.  (TR 47-48, 55).  He testified that he is taking Xanax, a Fentanyl patch, Ritalin, Nexium, and Paxil as prescribed.  He receives injections for his shoulder pain.  (TR 56).  He estimated that he can only stand fifteen to twenty minutes at a time, he can walk one block, and he can lift and carry approximately fifteen to twenty pounds.  (TR 52).  He reported that he has difficulty attending to his personal hygiene.  (TR 62).

### B.   Testimony of Plaintiff's Mother

Plaintiff's mother, Deborah Covell, testified that Plaintiff was very active before his physical challenges began, working up to sixteen hours a day.  She testified that he recovered and resumed his normal activities after his first back surgery in 2001 but he had difficulty doing things after the

3

second surgery in 2006. (TR 65). She testified that he was depressed and had a poor self worth following the second surgery, and he has had very poor concentration since December 2006.

**C.     Vocational Expert**

The VE testified that Plaintiff's past work in assembly production was light unskilled labor, and his position as a CNC machinist was medium skilled work. (TR 68-69). The ALJ asked the VE to assume an individual with Plaintiff's age, education, and employment history who was capable of performing a limited range of light work consisting of simple instructions and routine tasks with the following restrictions: (a) lifting and carrying up to ten pounds frequently and twenty pounds occasionally, (b) standing and walking for six hours in an eight hour work day, with the remaining time spent sitting, (c) no exposure to heights or hazards, (d) no climbing of ladders, ropes or scaffolds, and no crawling, (e) occasional climbing of ramps and stairs and occasional stooping, kneeling, and crouching. (TR 69-70). The VE testified that an individual with these limitations could perform Plaintiff's past work as an assembler.

Next the ALJ added to the above hypothetical the conditions of no public interaction, a position requiring only low stress work defined as only occasional decision making, and a sit/stand option that would allow the individual to change positions every thirty minutes for five minutes at a time while remaining on task. The VE testified that the individual could still perform the assembler position although there would be fewer jobs available with a sit/stand option. (TR 70-71). She also testified that the individual could perform the positions of assembler press operator and cleaner/polisher at the light exertional level, and final assembler and addresser positions at the sedentary level, comprising an estimated 14,400 jobs in the lower peninsula of Michigan. (TR 71-

72).

The VE testified that the individual would not be capable of sustaining employment if, in addition to the above limitations, the individual would be off task thirty percent of the time due to his concentration and focus problems or pain complaints, if he needed to lay down on the job for at least one hour per work day outside of the normal breaks, or if he would miss three days of work each month because of pain complaints.  The VE testified that because the positions she identified require frequent reaching, handling, and fingering, the individual would not be able to sustain employment if he had shoulder impairments that restricted his ability to reach more than ten minutes out of every hour.

**D.     Medical Record**

Defendant states that "[t]he ALJ's recitation of the medical evidence is sufficiently detailed" and does not set forth a separate account of the medical record.  (Docket no. 26 at 2).  Likewise, Plaintiff did not set forth a separate recitation of the medical evidence in his complaint or file a motion for summary judgment or response to Defendant's motion.  The ALJ's summary of the evidence is very thorough.  Therefore, having reviewed the record in full, the Court will adopt the summary of the medical evidence as set forth in the ALJ's opinion and will make references to the medical evidence as necessary throughout this Report and Recommendation.

**IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION**

The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2011.  She found that while Plaintiff has not engaged in substantial gainful activity since December 26, 2006, the alleged onset date, and suffers from the severe impairments of cervical degenerative disc disease, obesity, attention deficit hyperactivity disorder (ADHD),

bipolar disorder, and history of opiate dependence in sustained remission, he does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. The ALJ determined that Plaintiff has the residual functional capacity (RFC) to perform light work with the following restrictions: (a) no exposure to heights or hazards, (b) no climbing ladders, ropes or scaffolds, and no crawling, (c) occasional stooping, kneeling, crouching, and climbing ramps and stairs, (d) requires a sit/stand option which allows him to change positions every thirty minutes for five minutes at a time, (e) limited to work with only simple instructions and routine tasks, (f) no public interaction, and (g) limited to low stress work defined as only occasional decision making. The ALJ found that there were a substantial number of jobs available in the national economy that Plaintiff could perform with these limitations. Consequently, the ALJ concluded that Plaintiff was not under a disability as defined in the Social Security Act from December 26, 2006 through July 8, 2010.

## V.     LAW AND ANALYSIS

### A.     Standard Of Review

Pursuant to 42 U.S.C. § 405(g), the district court has jurisdiction to review the Commissioner's final decisions. Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S.

197, 229 (1938)).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

**B.     Framework for Social Security Disability Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

1. he was not presently engaged in substantial gainful employment; and
2. he suffered from a severe impairment; and
3. the impairment met or was medically equal to a "listed impairment;" or
4. he did not have the residual functional capacity to perform his past relevant work.

20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented him from doing his past relevant work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work experience to determine if he could perform other work. If he could not, he would be deemed disabled. 20 C.F.R. § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question if the question accurately portrays the plaintiff's physical and mental impairments. *Id.* (citations

omitted).

**C.     Analysis**

Defendant moves for summary judgment on the grounds that the ALJ's decision that Plaintiff is not disabled is supported by substantial evidence and is in accord with the law. The undersigned has thoroughly reviewed the ALJ's opinion and the evidence of record and finds that the decision is legally sound and is supported by substantial evidence.

At Step Two of the Five Step Sequential Analysis, the ALJ found that Plaintiff has the severe impairments of cervical degenerative disc disease, obesity, ADHD, bipolar disorder, and a history of opiate dependency. The ALJ also found that Plaintiff has carpal tunnel syndrome that was not severe. The undersigned finds no error in the ALJ's Step Two determination. At Step Three of the sequential analysis the ALJ reasonably determined that Plaintiff's impairments or combination of impairments did not meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Plaintiff has not challenged the ALJ's Step Three determination.

Continuing with the sequential analysis, the ALJ found that Plaintiff was capable of performing a range of light work despite his impairments. The ALJ reached the RFC determination after conducting a thorough review of the evidence of record, which included a review of Plaintiff's testimony, the testimony of his mother, an adult function report completed on behalf of Plaintiff, a performance review completed for Plaintiff's rest area job, and the medical evidence of record. The ALJ cited to specific evidence in the record that supports her conclusion that Plaintiff was capable of performing light work. After considering all of the evidence she reasonably concluded that the RFC accommodated Plaintiff's pain and mobility concerns by providing him with a sit/stand option and by limiting him to no exposure to heights and hazards, no climbing ladders, ropes, scaffolds,

or crawling, and only occasional stooping, kneeling, crouching, and climbing of ramps or stairs.

Contrary to the allegations made in the complaint, the ALJ considered the opinions of Dr. Chodoroff and even included in the RFC a sit/stand option that incorporated the doctor's suggestion that Plaintiff change positions. Although the ALJ assigned little weight to some of Dr. Chodoroff's opinions, she gave good reasons for doing so. As an example, the ALJ assigned little weight to Dr. Chodoroff's assessment that Plaintiff was unable to work long term. The ALJ noted that she discounted this opinion because the decision as to whether Plaintiff could work was reserved for the Commissioner. She also found that this opinion was inconsistent with the doctor's own treatment notes showing that Plaintiff reported a big improvement with pain management after he was placed on a Fentanyl patch. (TR 18, 21-22). In addition, the ALJ assigned little weight to Dr. Chodoroff's February 2007 physical restrictions because the restrictions were established shortly after the December 2006 back surgery and prior to all of his treatment. (TR 21).

The record shows that the ALJ also considered Dr. Barberio's opinions. (TR 24). The ALJ reviewed the doctor's opinions and assigned little weight to his assessment that Plaintiff could no longer work as a laborer due to his psychiatric difficulties. The ALJ found that this assessment was inconsistent with Dr. Barberio's treatment notes and other evidence of record. The ALJ discussed her determination and gave good reason for her conclusion. She also thoroughly discussed the other evidence of record. The ALJ noted that she accounted for Plaintiff's mental limitations by restricting Plaintiff to work with simple instructions and routine tasks, no public interaction, and low stress

work involving only occasional decision making. The undersigned finds that the ALJ did not err

in her treatment of Dr. Chodoroff or Dr. Barberio's opinions.

The ALJ gave a thorough review of the evidence of record and made a reasonable RFC determination that accommodates Plaintiff's limitations. She posed accurate hypothetical questions to the VE and made an appropriate Step Five determination. The ALJ's analysis and disability determination are supported by substantial evidence and should not be disturbed.

**REVIEW OF REPORT AND RECOMMENDATION**:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court

determines that any objections are without merit, it may rule without awaiting the response.

Dated:  July 22, 2013           s/ Mona K. Majzoub
                                MONA K. MAJZOUB
                                UNITED STATES MAGISTRATE JUDGE

# PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Patrick A. Brenner, II and Counsel of Record on this date.

Dated: July 22, 2013            s/ Lisa C. Bartlett
                                Case Manager